## OCTOBER TERM, 1799.

### CHRISTOPHER GREENUP v. JOHN COBURN.

#### In Chancery.

This was an appeal from a decree of the Lexington district court.

James Major, on the 2d day of June, in the year 1780, made the following entry on a treasury warrant with the county surveyor, to-wit:

"James Major enters 400 acres, on a treasury warrant, on the east side and adjoining to Lexington tract, including a sinking spring about one and a half miles from Lexington fort, and adjoining John Floyd's 200 acre tract."

And having assigned the said entry to James Parberry, who assigned the same to Benjamin Netherland, the said Netherland, on the 12th day of May, in the year 1783, caused the same to be surveyed in the manner described on the connected plat, and the title to the said survey having become vested by assignment in the appellee, he obtained a grant for the said 400 acres of land.

Francis McConnell, on the 13th day of January, in the year 1780, obtained from the commissioners for the district of Kentucky the following certificate for a settlement and pre-emption, to-wit:

"Francis McConnell this day claimed a settlement and pre-

Greenup v. Coburn.

emption to a tract of land in the district of Kentucky, lying on the head of the south fork of Elkhorn creek, adjoining the land of William McConnell on the east, by settling and residing in the country twelve months before the year 1778. Satisfactory proof being made to the court, they are of opinion that the said McConnell has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 3d day of February, in the same year, entered the certificate for settlement with the county surveyor in the following words, to-wit:

"Francis McConnell enters 400 acres by certificate, etc., lying on the head of the south fork of Elkhorn, joining the land of William McConnell on the east."

And having obtained a pre-emption warrant, entered the same on the 29th day of April, in the year 1780, in the following words, to-wit:

"Francis McConnell enters 1,000 acres upon a pre-emption warrant, adjoining his settlement, bounded by his settlement on the south, William McConnell on the west, and John Todd on the east."

And having caused the said settlement and pre-emption to be surveyed in the manner described in the connected plat, departed this life, leaving James McConnell his heir-at-law, who, having also departed this life, left John McConnell, etc., who were the defendants with the appellant in the district court, his heirs-at-law.

It appeared that James McConnell, during his lifetime, had obtained a grant of elder date than that of the appellee, and had sold his interest in that part of the pre-emption which interfered with the appellee's survey to the appellant, but was not to warrant the title.

This suit was brought by the appellee in the court of appeals, while that court had original jurisdiction in land causes, and removed for trial to the district court when that jurisdiction was taken away, against the heirs of James McConnell and the appellant; and a decree in favor of the appellee for the whole interference was pronounced by that court, from which decree the appellant prayed for and obtained this appeal.

The annexed connected plat, No. 33, was returned in this cause, of which the following is an explanation:

1 2 3 4 5 6, the bounds of the town of Lexington as surveyed in 1783, containing 710 acres, and including 70 acres purchased of John Todd, assignee of John Floyd, out of the military tract of 200 acres. 6 5 7 8 9 10, Benjamin Netherland's survey, as assignee of James Major. A B C D E F G H I, Francis McConnell's settlement according to survey. E F K L M 6 10 9 N, pre-emption do. 9 10 6 M 11 8, the interference. 12 A I H G 13 14, William McConnell's settlement according to survey. 13 14 15 16, pre-emption do. 1 17 9 N, John Floyd's military survey of 200 acres sold to John Todd. *S*, a corner of Shelby's and Preston's military surveys. The dotted line from *S* to 1 is a line of John Maxwell's private survey run by John Floyd. The line marked thus, oooo, laid down by direction of Christopher Greenup, taken from a plat returned by Robert Todd, in the caveat formerly depending in the supreme court for the district of Kentucky, *The Trustees of Lexington* v. *John Bradford*, and said to represent the bounds of Lexington as run by William Pendleton. From 9 southwardly with Floyd's line to Pendleton's line, with that to the dotted line, and with the dotted lines to 9, the entry of Major laid down according to the decree of the court of appeals. o s, Sinking spring. F. Mc, Francis McConnell's improvement. W. Mc, William McConnell's improvement. B, the old block-house. p, Robert Patterson's house.

The following entries, etc., were read at the trial, to-wit:

"*January* 3, 1780.

"William McConnell this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, lying on the waters of the south fork of Elkhorn, joining on the east side of Col. Shelby's land, and Col. Preston's on the south-west, including a sinking spring, and adjoining the claims of Robert Patterson and Francis McConnell, to include the said McConnell's improvement, by raising a crop of corn on the premises in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said McConnell has a right to a settlement of 400 acres, to include the said improvement, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

"*February* 3, 1780.

"William McConnell enters 400 acres by virtue of a certificate, etc., lying on the waters of the south fork of Elkhorn, joining on the east side of Col. Shelby's land, and Col. Preston's on the south-west, including a sinking spring, and joining the land of Robert Patterson and Francis McConnell, to include his improvement."

"William McConnell enters a pre-emption warrant of 1,000 acres joining his settlement, bounded by his own settlement on the west, and David Perry on the north, and Francis McConnell on the south."

"Surveyed for John Floyd, assignee of Charles Cummins, who was assignee of James Cowder, who was assignee of James Buford, by virtue of the governor's warrant to him as a sergeant in the late war, and agreeably to the king's proclamation of 1763, 200 acres of land in Fincastle county, near the head of the middle fork of Elkhorn creek, and joining the land measured for John Maxwell. Beginning at a sugar tree near his south-east corner, and running thence with his line north 20 east, 300 poles, crossing a branch to two sugar trees; then leaving said line south 70 east, 109 poles, to an ash and sugar tree; south 20 west, 300 poles, to an ash and buckeye; thence north 70 west, 109 poles, to the beginning."

"*May* 12, 1783.

"FAYETTE COUNTY, SCT: Pursuant to an act of the general assembly of Virginia, passed the 1st day of July, 1782, entitled 'An act to establish a town at the court house, in the county of Fayette, by the name of Lexington.' The trustees of the said town, viz:

Robert Patterson, William Mitchell, Andrew Steele, William Henderson, William McConnell, William Steele, and Robert Todd, have caused a survey of the same to be made of 710 acres, in order to be recorded as directed by law, of which this is a plat of the in and out lots; the out lines are as follows, to-wit: Beginning at A, a black walnut and elm a north-east corner, to Col. John Todd's settlement and pre-emption, who is assignee of John May, running north 45 west, 285 poles, to a walnut at B; thence south 45 west, 420 poles, to a stake; thence south 45 east, 170 poles, to a stake; thence north 45 east, 54 poles, to another stake; thence south 45 east, 115 poles, to another stake; thence north 45, east 366 poles, to the beginning."

The following is a summary of the depositions read at the trial in the inferior court:

Gen. Robert Todd deposed that in the year 1783 he made for Benjamin Netherland the survey under which John Coburn claims. That Francis McConnell was present when it was made, and that it was made before the said McConnell made the survey of his pre-emption. That McConnell expressed some dissatisfaction about it, but that he advised Netherland to abide by the survey, telling him at the same time that McConnell could not come far enough west with his pre-emption to interfere with him. That when McConnell did make the survey of his pre-emption, he made the same in such a manner as to interfere with a claim of his, and upon his threatening to caveat him, the said McConnell promised to give up the interference, provided he would let his patent issue, which he understood was done by McConnell in order to get a patent before Netherland. That he assisted James Greer, about the month of December, 1776, to improve at the sinking spring, near the north-west line of Netherland's said survey, which then, and at the time he made the survey, was a sinking spring. That the said Greer left his wedges there under a log, and that he went, when he removed his family to this country, to the said spring to hunt for the wedges, but could not find them, but found the log under which they had been laid, and the stump from which the log had been cut, and then well knew the spring to be the same. That this sinking spring was the only one he knew near Lexington on vacant land, and the only sinking spring near the town on the north-north-east or east side, and that he believed there was no other. That there was a sinking spring in Floyd's military

survey, and another in Patterson's claim. That the boundaries of the Lexington tract were not, in the year 1780, the same as they are now, but that he could not tell how they differed, but that he laid down the old lines shown to him in the survey made out in the caveat, *The Trustees of Lexington* v. *Bradford*. That he was acquainted with Floyd's military survey of 200 acres. That Col. Patterson showed one of the corners near where the house now stands in 1783, and John Floyd showed him the sinking spring and the north-west line in 1776, and that he then saw several of the marked trees.

Robert Patterson deposed, that he always understood and believed that John Floyd, in the year 1775, made a private survey for John Maxwell, beginning at the south-east corner of Shelby's military survey, and the north-east corner of Preston's, and that the line from the corner ran south 70 degrees east to a mulberry and locust, and perhaps another tree, which stood within his present garden fence, and not far either from his present house or stable. That the mulberry and locust were marked to answer as a corner for the said survey. That the other tree, if there was another, was down. That the second line of the said survey was run north 20 degrees east. That himself and many others in the town of Lexington knew, as early as the 2d of June, in the year 1780, that John Floyd claimed a military survey on the north-west of the town tract, which was likely to interfere with the same, and that, in 1781, an agreement took place between John Todd, who had purchased the same of Floyd, and himself, by which the said Todd relinquished his claim to the part that interfered with his settlement. That he knew the sinking spring in Netherland's survey in 1780. It sank before it ran to any branch. That he thinks he was first at it in 1776, but since 1779 he has been at it every year, and that he knew of no other answering the description. That he got his information respecting the military survey of Floyd himself. That he made an improvement at the sinking spring included in it, and gave it to David Perry, but that he never saw any marked line, except the line of Maxwell's private survey.

That on the 2d of June, 1780, the bounds of Lexington were not as now surveyed. That there had been a survey of 640 acres made, and, as the lines ran, there was little or no land on the south side of the branch, and the lines extended further to the east than the present tract.

BRECKINRIDGE for appellant.—The appellant claims under the eldest grant; therefore, it is only necessary to inquire whether the claim of the appellee can be supported.

It can not. Major's entry must have reference to the Lexington tract as it then stood. That the town had not the boundary that it now has, you will find by the testimony of Patterson and Todd. The entry must have reference to the state of things as they were when the entry was made. Suppose the name had been changed.

The first call is for the east side, and joining the Lexington tract. As the town is now bounded, it has not a side nearer east than north-east; but let Major adjoin the town as surveyed by Pendleton on the long line, and he will adjoin on a side which is within twenty degrees of being a north side.

Including a sinking spring. Where is this spring? And what is the proof about it?

The witnesses describe two other sinking springs: the one in Patterson's settlement, and the other in Floyd's military survey, which is the largest and most notorious of the two. This spring is on the west side. By the cases of *Pawling* v. *Merewether*, and *Consilla* v. *Briscoe*, you may reject a repugnant call in an entry. What would you reject here? Certainly the sinking spring known only to Todd and Patterson, and then you must lay Major on the line run by Pendleton north 45 east; or, if you reject the call on the east side, you may fix him so as to take in Patterson's sinking spring, and adjoin the military survey.

Patterson's testimony proves two things with respect to Pendleton's lines:

*First.* That he made that survey subsequent to the act of 1779.

*Secondly.* That he did run those lines as a boundary.

Let it be admitted that Pendleton had no sufficient authority to mark out a boundary for the town, still he did it, and it then had the reputation of being the boundary of the town, and that was sufficient as an object of description in an entry. If we show a Lexington tract in 1780, or a thing called a Lexington tract in 1780, it is sufficient.

Todd says he laid down those lines as the old bounds of the town in the suit of *The Trustees* v. *Bradford*.

It was contended, in the argument in the inferior court, that, by an agreement amongst themselves, the adjacent villagers had fixed the present bounds of the town. If that agreement was a good one, there is no proof of the fact here.

You can not try the title of the village rights in this suit. Besides, the Lexington tract is a claim paramount to the villagers'.

These things, I think, are evident:

*First.* That Todd acknowledges the lines of Pendleton.

*Secondly.* That the Lexington tract is paramount to the claims of the villagers.

*Thirdly.* That there being more than one line which presents an eastwardly side, the entry is void for uncertainty.

*Fourthly.* That the entry calls to adjoin the Lexington tract, which, by law, was 640 acres, and they now show a survey of 710 acres.

*Fifthly.* That if Major is to adjoin the long line of Pendleton, he ought to adjoin the whole length of it, and run to Floyd's corner, at N; and

*Sixthly.* Although there is surplus in McConnell's pre-emption, it is not to be allowed to the youngest patentee. See *Dougherty* v. *Crow.*

HUGHES for appellee.—The appellee claims under an entry on treasury warrant made June 1, 1780.

" James Major enters 400 acres, upon a treasury warrant on the east side, and adjoining the Lexington tract, including a sinking spring about one and one-half miles from Lexington fort, and joining John Floyd's 200 acre tract."

The defendant under a settlement and pre-emption, a village right, entered before the complainant's entry.

The calls of Major's entry are:

*First.* On the east side, and joining to Lexington.

*Secondly.* Including a sinking spring, about one and one-half miles from Lexington fort; and

*Thirdly.* Joining John Floyd's 200 acre tract.

*First.* On the east side and joining to Lexington.

Lexington, as laid off under the act of assembly, has no east side, but a north-east, and also a south-east, side. The north-east side is the side called for, because the third call is to adjoin John Floyd's 200 acre tract.

The call of Major, in 1780, is to adjoin a village, the boundaries of which was not ascertained.

Rev. Co. 91. Sec. 5. "And whereas, several families, for their greater safety, have settled themselves in villages, or townships, under some agreement, between the inhabitants, of laying off the same into town lots, to be divided among them, and have, from present necessity, cultivated a piece of ground adjoining thereto

in common. *Be it enacted*, That 640 acres of land, whereon such villages, or towns, are situate, and to which no other person hath a previous legal claim, shall not be entered for or surveyed, but shall be reserved for the use and benefit of the said inhabitants, until a true representation of their case can be made to the general assembly, that right and justice may be done therein; and, in the mean time, there shall be allowed to every such family, in consideration of their settlement, the like quantity of land as is herein allowed to other settlers, adjacent or convenient to their respective village or town."

This law provides:

*First.* That 640 acres of land shall be reserved.

*Secondly.* That they shall be entitled to settlements and pre-emptions adjacent or convenient to the town.

*First Question.* How was the town to be bounded before it was established by law?

By the agreement of the villagers; and that can be only ascertained by the act of assembly, and their locations and surveys. "Under some agreement, between the inhabitants, of laying the same off into town lots, to be divided among them." The testimony is complete, on the part of the complainant, by showing that agreement, evidenced by the plat of the town, and the adjoining surveys of the villagers, Todd, assignee of May, Patterson, and Francis McConnell. Besides, it shall not lay in the mouth of Francis McConnell to say these are not the town bounds, when he has surveyed to them himself. But what testimony is there to show that any other bounds were agreed to by the inhabitants? None. The surveyor has, as directed, laid down the old town bounds as run by Pendleton, and laid down on a plat. *The Trustees* v. *Bradford*. What does this prove? That Pendleton ran lines, but not that it was assented to by the town. Neither of the witnesses say so; and Pendleton's lines could not have been the boundaries, because Patterson says the old bounds extended to the north and north-east farther, and these do not.

Besides, Pendleton's lines run into Todd, assignee of Floyd, whereas the town quantity of 640 acres does not, and they have seventy acres by purchase. But in opposition to this we have,

*First.* The assent of the inhabitants to the other bounds. By the adjacent surveys of the villagers, the other line would have altered the situation of Todd and Patterson.

*Secondly.* The act of assembly.

*Thirdly.* The decision against Bradford.

Robert Patterson is a villager, calling for about one-half a mile from Lexington to include his improvement, which must have been from the fort. Todd, assignee of May, is on the south-east, and McConnell on the north-west. Beside, the villagers had then no right to bound their town. 640 acres shall not be entered for, say the legislature, until their case can be made known.

It was then a matter of uncertainty whether that land would be confirmed to them or not.

The provision is, that 640 acres to which no other person hath a previous legal claim. The villagers then were bounded by Floyd, and in 1780, when the commissioners sat, no doubt they agreed among themselves to run the town out for quantity to the north-east, where James Greer improved, as General Todd tells you, who abandoned his improvement, and obtained a certificate on Clear creek, the 22d April, 1780, as the only vacant land. But this argument is a strange one in the mouth of a villager, and well might the owner of a treasury warrant thus address him: For your benefit 640 acres has been reserved, beside your settlement and pre-emption. I have been obliged to wait your agreement. If I had entered otherwise, I should have lost my land, and yet you now contend you have a right to go out of your entry to deprive me of my land.

The second call is to include a sinking spring. Patterson and Todd prove this to have been a sinking spring, and that there was no other answering the description. The distance from the old block-house is 530 poles, only 50 poles more than the mile and a half. The last call joining John Floyd's 200 acre tract, explains the doubt as to the side of Lexington, and shows with more certainty the sinking spring, as it proves it can not be that included in Floyd's tract. This is an old military survey, proved by Todd and Patterson, and the plat.

But admitting, for a moment, that the complainant's claim ought to have adjoined Pendleton's lines, he was also to adjoin Floyd, and to include the sinking spring; and as he was to lie east, he ought certainly to run at 45 degrees from Floyd's corner at 9.

By this means he would leave out about 25 acres at the north-east end. I do not admit that one claim calling to adjoin the line of another is to adjoin the whole length of the line. But if it was

14

true, as a general principle, the call here for the sinking spring would take it out of the general rule.

I will examine the appellant's claim. As it is the pre-emption which interferes, I will consider that. The calls are to be bounded by his settlement on the south, William McConnell on the west, and John Floyd on the east.

Certainly the course of Floyd's north-west line, continued, ought to be the eastern boundary of the pre-emption. Beside, McConnell has in his pre-emption 351 acres, 1 rod and 16 perches of surplus, much more than the whole interference, and all the interference is out of his entry.

And now, at this term, the following decree was pronounced:

By the Court.—It seems to the court, that. the call in the 400 acre entry on which the claim of the appellee is founded, adjoining to the Lexington tract, must be taken to mean to adjoin the survey of the Lexington tract, which had been made before the time he made his entry by William Pendleton, and represented by the connected plat, signed by R. Todd.

And it also seems to the court, that the identity and notoriety of John Floyd's tract, and of the sinking spring called for in the said entry, and represented in the surveyor's report, made by the order of the said district court, are both satisfactorily ascertained, and that to give these two calls effect, as well as the calls on the east side of the Lexington tract, the said sinking spring should have been just included in the most northwardly corner of the survey made on the said entry, and have been run from thence to the most eastwardly corner of the said Floyd's survey; thence with the south-eastwardly line of the same to the most northwardly line of the said Lexington survey; thence eastwardly with the same, and with a line run at right angles from the beginning of the said first mentioned line so far that a line parallel to the same would have included the quantity.

And whereas the said appellant, and those who were co-defendants with him to the suit in the district court, have shown no other right to the land in contest, but a survey and patent obtained subsequent to the date of the said entry. Therefore, it is decreed and ordered, that the decree aforesaid be reversed, annulled, and set aside; that the cause be remanded to the court from whence it came, who are directed to have a survey of the land claimed by the appellee made agreeably to the foregoing opinion of this court, and that the said district court do decree accordingly. And it is

further decreed and ordered, that the appellant recover of the appellee his costs by him in this behalf expended.